Luis Arce, demandante y apelado, *v.* Juan Pedro Díaz, demandado y apelante.

Número 10831.

*Sometido:* 2 de noviembre de 1953. *Resuelto:* 15 de diciembre de 1954.

*Héctor Reichard,* abogado del apelante; *José Veray, Jr.,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

Los hechos envueltos en este caso están correctamente expuestos, en las siguientes conclusiones de hecho formuladas por el ilustrado juez sentenciador:

"1. El demandante Luis Arce es dueño en pleno dominio de una finca rústica situada en el barrio Corrales de Aguadilla, de 76 cuerdas con 307 milésimas, que adquirió por compra a don Ramón Añeses, mediante escritura número 23, el día 10 de abril de 1931, ante el notario Augusto Reichard del Valle, que se describe así:

"RÚSTICA: en el barrio Corrales de este Municipio, de 76 cuerdas y 307 milésimas, igual a 29 hectáreas, 99 áreas y 17 centiáreas de terreno, en lindes al norte, con José Pío González separado por un camino vecinal; al este, con Alejandro Álvarez; al sur, con la carretera de Aguadilla a Isabela y al oeste, Telesforo Cabán, Juan Pedro Díaz, Galo Rivera y Juan Pedro Díaz. Inscrita al folio 123 del tomo 72 de Aguadilla, finca número 3534, inscripción *1a.*

"2. El demandado Juan Pedro Díaz es dueño de la parcela 'C' que forma parte de una finca de mayor cabida, la que se describe así:

"RÚSTICA: sita en el barrio Corrales de Aguadilla, compuesta de 75 cuerdas 102 milésimas, igual a 29 hectáreas, 24 áreas y 61 centiáreas de terreno, en lindes al norte, con la Sucesión Cabán; al este, Luis Arce; al sur, la carretera número dos y al oeste, Onofre López; Sucesión Domingo Ducós, María Cáceres de Gerena y Sucesión Cabán. Inscrita al folio 247 del tomo 85 de Aguadilla, finca número 4298.

"3. Que la finca del demandante colinda por el lado sur con la carretera insular de Aguadilla que conduce a Isabela y mide partiendo de un guayabo por el lado sudeste en línea recta hasta una piedra que queda en el lado sudoeste y mide por dicho lado 232.88 metros; por el lado oeste, en línea recta partiendo de un punto de una piedra a un jobo midiendo 1046.27 metros y del

jobo en línea recta a un almácigo mide 70.63 metros; por el lado este, partiendo de un punto de un guayabo en línea recta a un concreto, mide 977 metros y por el lado norte, empezando en un concreto en línea recta a un tártago, mide 244.51 metros y del tártago a un almácigo en línea recta mide 18.93 metros.

"4. Que el 12 de junio de 1948 el Ingeniero Civil Simón Amador Amador preparó un plano de una mensura hecha por él en las fincas de don Luis Arce y de don Juan Pedro Díaz; que para hacer ese plano tuvo a la vista el plano de la finca original propiedad de don Ramón Añeses, radicada en el barrio Corrales de Aguadilla; que ese plano se refiere a la parte de la finca que hoy en día posee don Luis Arce; que ese plano se levantó en la fecha que aparece del mismo o sea en diciembre 18 de 1922 por el agrimensor R. Jiménez Soto; que de acuerdo con ese plano la colindancia oeste de la finca de don Luis Arce es recta; que por la colindancia sud, por donde queda la carretera, es recta; que los puntos por la colindancia sur son un jobo y una piedra; que de ese jobo a esa piedra hay una distancia de 410.88 metros; que la finca a que se refiere el plano en azul de don Luis Arce tiene una cabida de 76.307 cuerdas; que ese plano fué levantado en abril 16 de 1931 por el agrimensor R. Jiménez Soto; que la colindancia sud de la finca de don Luis Arce de 76 cuerdas aparece de un guayabo a una piedra; que entre un punto y otro en esa colindancia hay 232.88 metros; que en el plano de la finca grande la colindancia sur aparece con una distancia de 410.88 metros; que al hacer la mensura el testigó llegó a la conclusión de que la finca de don Luis Arce mide esa distancia por su colindancia sur, porque al hacer la mensura partió del jobo, midiendo 178 metros, que es la diferencia entre 410.88 y 232.88 metros, para localizar donde estaba supuesto a estar el guayabo; que desde ahí continuó la mensura hasta completar el total de 410.88 metros y puso un punto; que era donde estaba supuesta a estar la piedra; que entonces notó que la piedra estaba 5.20 metros hacia la propiedad de don Luis Arce; que al hacer el deslinde de la colindancia oeste de la finca de don Luis Arce encontró que la colindancia que tienen ambas fincas, la del señor Arce y la del señor Díaz, no está en línea recta, la que en unos casos entra en la finca de don Luis Arce y en otros casos entra en la finca de don Juan Pedro Díaz; que la porción que la colindancia entre en la finca de don Luis Arce asciende a 3.19 cuerdas, situada en el barrio Corrales de Aguadilla, dividida en tres parcelas; la parcela A compuesta de 53 céntimos, colinda por el norte y oeste, con Juan Pedro Díaz;

por el sur, con la carretera insular y por el este, con Luis Arce; la parcela B de 16 céntimos, colinda por el norte, sur y oeste, con Juan Pedro Díaz y al este, con Luis Arce; y la parcela C de 2 cuerdas 66 céntimos, colinda por el norte actualmente con la Autoridad de Tierras de Puerto Rico; por el oeste, con Juan Pedro Díaz y por el sur y este con Luis Arce; las parcelas A de 53 céntimos y la C de 2.66 cuerdas, pertenecen al demandante Luis Arce y la parcela B de 16 céntimos, pertenece a Juan Pedro Díaz; que siendo ello así resulta que una porción de 3.03 cuerdas perteneciente a don Luis Arce, está en posesión del demandado Juan Pedro Díaz; que esa es la porción de terreno de don Luis Arce que está en posesión de don Juan Pedro Díaz y que la porción de 3.03 cuerdas, tiene un valor de trescientos o cuatrocientos dólares y la viene poseyendo ilegalmente el demandado sin título alguno y contra la voluntad del demandante, aproximadamente desde el 1934 al 1935."

El único error señalado por el demandado y apelante va dirigido contra la corrección de las conclusiones de hecho formuladas por el juez sentenciador en su soberana apreciación de la prueba. Hemos escrutinizado toda la prueba, especialmente la prueba documental, y estamos convencidos que el plano levantado por el ingeniero civil, señor Simón Amador y Amador el día 12 de junio de 1948, levantado por mutuo encargo de ambas partes, representa la verdadera situación de hecho en cuanto a la controversia de la colindancia oeste de la finca de don Luis Arce y la colindancia contigua este de la finca de don Juan Pedro Díaz. El demandado y apelante trata de convencernos que dicho plano no es obligatorio para él. Asumiendo, aunque sin resolverlo, que un plano no resulte obligatorio para una de las partes que lo manda a confeccionar conjuntamente con la otra parte envuelta en una controversia como la presente, es indudable que constituye, por lo menos, parte de la evidencia que puede utilizar un Tribunal para restablecer a su verdadera situación los límites de diversos fundos ya demarcados.

La acción de deslinde es totalmente distinta a la acción reivindicatoria. La acción de deslinde "se otorga a todos los propietarios cuyas propiedades limítrofes tienen con-

fundidos sus linderos por causas naturales, accidentes fortuitos o actos voluntarios de tercero, debiendo concurrir todos a un solo juicio; y es además una acción de carácter imprescriptible, al efecto de que cualquiera de los dueños puede solicitar en todo tiempo cese la confusión de límites . . . . Tal acción es ciertamente muy distinta de la acción reivindicatoria que, de modo subsidiario, se da, cuando los límites de diversos fundos contiguos *hállanse ya demarcados,* o cuando como consecuencia de la demarcación, hay necesidad de reivindicar terrenos que se creen usurpados: 3 Manresa, Comentarios al Código Civil Español 305, (Sexta ed. corregida y aumentada de la Editorial Reus S. A.), (1934).

Es indudable que en este caso, se trataba de fundos cuyos límites estaban ya debidamente demarcados. En primer lugar, se produjo en evidencia el plano de la finca de don Ramón Añeses de la cual se segregó la finca que hoy pertenece al demandante apelado don Luis Arce, levantado por el agrimensor señor Jiménez Soto en 18 de diciembre de 1922, (*exhibit* 1 del demandante) ; en segundo lugar, se presentó asimismo en evidencia el plano de la finca del demandado y apelante don Juan Pedro Díaz, comprada a don Santiago Arce, levantado por el agrimensor don Juan Elías Cerezo en 10 de diciembre de 1923, (exhibit 1 del demandado) ; en tercer lugar, se presentó también en evidencia, el plano ordenado por acuerdo de las partes, levantado por el ingeniero don Simón Amador y Amador en 12 de junio de 1948, (exhibit 3 del demandante). Siendo esto así, la acción de deslinde no hubiera tenido justificación. La acción apropiada para dirimir la posible usurpación de terrenos previamente demarcados era la acción reivindicatoria que exige una prueba distinta, según nos informa Manresa, en la siguiente glosa:

"La acción de reivindicar—decíamos—es más amplia: reclama por ella el propietario su cosa de quien la tenga o posea. De ahí que el ejercicio de esta acción entraña muy complejos requisitos y exigencias. Por de pronto, como sólo se concede al propietario de la cosa, para que éste pueda ejercitarla es preciso

que demuestre que lo es; sólo cambia este deber de probar cuando el demandado arguya, no contra el título del demandante, sino invocando título posterior, que debe probar.

"Ahora bien: y ¿qué es lo que el propietario debe producir y demostrar como tal para que prospere su acción? Lo siguiente, en tesis general:

"1º Debe señalar bien, definir, identificar la cosa que trata de reivindicar. Así, si se trata de inmuebles, es jurisprudencia muy repetida que ha de fijarse con precisión su situación, cabida y linderos, y demostrarse durante el juicio que el predio reclamado es aquel a que se refieren los documentos, títulos y demás medios de prueba en que el actor funde su pretensión, y que siendo de mero hecho la cuestión de su identidad, ha de estarse en casación a la apreciación que sobre ella haga la Sala Sentenciadora.

"2º Debe presentar el título justo de dominio y probar éste.

"La realización de esta última obligación entraña una gran complejidad de casos, tanto para determinar el título como para regular el desarrollo y resultado de la acción, que es preciso resolver teniendo en cuenta la misma jurisprudencia del Supremo Tribunal, la ley de Enjuiciamiento civil y la ley Hipotecaria." 3 Manresa 138, (obra y ed. citadas).

El conflicto entre el plano levantado por el agrimensor señor Jiménez Soto en 1922 y el plano levantado por el agrimensor don Juan Elías Cerezo de 1923 es evidente: en el primero, la colindancia oeste de la finca del demandante y apelado es en línea recta, en el segundo es en línea curva. El tercer plano levantado por el ingeniero nombrado de común acuerdo por ambas partes, ratifica la versión del primer plano, que es el favorable al demandante y apelado. Este tercer plano, hecho por un ingeniero civil, desde el punto de vista estricto del conocimiento experimentado, tiene que ser superior a la versión de ambos planos anteriores, (1) por ser presumible el mayor desinterés en una persona seleccionada por común acuerdo entre las partes, (2) por ser mayor el grado de conocimiento profesional.

Este último plano es el que llama la atención que el punto 12, o sea la piedra que le servía de signo exterior estaba corrido 5.20 metros dentro de la finca del demandante y ape-

lado, y lo establece de nuevo de acuerdo con puntos contrastados de los anteriores planos. Además el callejón o camino vecinal sobre el cual basa el demandado y apelante la irregularidad del principio de la colindancia oeste, partiendo desde el sur, de la finca del demandante y apelado, queda fuera del perímetro de la finca, y por lo tanto, la versión topográfica del plano del 1922 del agrimensor señor Jiménez Soto queda confirmada. El resto de la prueba testifical es conflictiva en cuanto a este punto. El ilustrado juez sentenciador le dió crédito a la prueba del demandante y apelante, y dicha exposición factual, es la que mejor coincide con la evidencia pericial, de carácter documental, que tuvo ante sí el ilustrado juez sentenciador.

Habiéndose identificado debidamente la cosa que se trata de reivindicar y habiéndose probado el título de dominio sobre la cosa, la corrección del fallo es demasiado evidente para que podamos intervenir con él.

*Debe confirmarse la sentencia apelada.*

*la querella, se suspende al querellado del ejercicio de la abo-
gacía y del notariado por el término de un mes.*

